LOTTINGER, Judge.
This action was instituted by three of the five aldermen of the Town of Mandeville, Louisiana, against the mayor thereof seeking (1) an injunction against the latter restraining him from voting at any meeting of the Town Council except where one of the aldermen is absent and the mayor’s vote is necessary to break a tie and, (2) judgment enforcing a resolution introduced at a meeting of the Town Council held on November 10, 1960, whereat the defendant mayor voted thus causing a tie vote and a resulting deadlock. The matter is before us on an appeal taken by the mayor from a judgment which was rendered against him as prayed for.
The matter was submitted to the lower court on a stipulation of fact which revealed that the Town of Mandeville functions under the provisions of a special charter set forth in Act 74 of 1840, the pertinent portions of which are as follows:
“Section 4
“Be it further enacted, & c., That the Mayor and the five Aldermen shall be known under the name of ‘Town Council’, of which, the Mayor shall be ex-officio president, having the right to vote and of giving his casting vote when the absence of one of the Aider-men shall render it necessary, and in case of a vacancy occasioned by the absence or incapacity of the Mayor and Council shall appoint one of their members as president pro tempore.”
“Section 5
“Be it further enacted, & c., That the Town Council shall have the power to appoint as many subordinate officers as they may deem necessary to preserve the peace and proper administration of the affairs of the said Town; that they shall appoint in each year a suitable and prudent person to be Treasurer of the Town; that person shall, before entering in office furnish such security as may appear sufficient to the said council, to answer for the faithful discharge of his duties. A majority of the town council shall form a quorum to administer the affairs; but it shall require a majority of the two-thirds of the whole council to pass a law or an ordinance, a majority of the two-thirds of the town council shall have the right to make by writing all regulations which shall not be contrary to the dispositions of this charter or to the Constitution and laws of the State or of the United States, which they shall deem necessary for the Police of the said town and to adopt such ordinances which they shall deem convenient in relation to the market house of the said town, its streets, walks, public roads and the draining, filling up, and the guard and patrols of the town. The council shall have the right to ordain and impose such fines which shall not exceed fifty dollars for each offence committed in violation of their *310 regulations, which fines may he recovered before any Court or Justice of the Peace of a competent jurisdiction in the name of the Mayor of the said town and for the benefit thereof. The council shall have the right to impose such taxes which shall not exceed fifty per centum over the State Tax, on all property which have been taxes by the State, and situated within their jurisdiction, shall be able to impose a fine on the members who shall not assist at the sitting, to adjourn at the time and place which they may please, and to pass ordinances concerning their own members.”
With the above statutory provisions before him the trial judge concluded that, as a “casting vote” is one available to a presiding officer of an assembly to break a tie vote among its members, under Section 4 of the act, if the mayor were given, in addition, the right to vote at all times in the absence of one of the aldermen, there could never be a tie vote and hence provisions for the “casting vote” would become meaningless. He reasoned further that, giving meaning to the entire wording of the statute, the mayor was accorded only one vote, a “casting vote”, and that only in cases of a tie occasioned by the absence of one of the aldermen.
Subsequent to the adjudication of the matter in the Court below it was revealed that the Charter of Mandeville was amended in 1906 and again in 1923. The provisions of these amendments are as follows:
“That Section 4 of the Charter of the Town of Mandeville be amended and re-enacted so as to read as follows. That the Mayor shall preside at all meetings of the Board of Aldermen, and in case there be an equal division he shall give the deciding vote. He shall have the superintending control of all offices in the affairs of the Municipality; he shall take care that the laws and ordinances are executed; he shall have power to veto any measure passed by the Board of Aldermen, but a measure vetoed may be adopted, notwithstanding, if two-thirds of the Aldermen vote therefor; * * *.” (As amended April 2, 1906.) (Italics ours.)
“That Section Five be and it is hereby amended so as to read as follows:
“That the mayor and Board of Aldermen shall have power to enact all laws and ordinances necessary for the general welfare of said municipality and the inhabitants thereof, and to that end, the Town is especially empowered to levy and collect taxes upon all the real, mixed and personal property within the corporate limits taxable according to the laws of the State for general revenue purposes, to incur debt and issue bonds and to levy special taxes for the purpose of erecting and constructing buildings, public schools, bridges, wharves, breakwaters, harbors, drainage canals and levees, and other works of public improvement, to prevent the introduction of infectious diseases within the Town, collect landing dues from all boats and vessels, to sue and be sued, and to make all contracts, and to do all other acts in relation to the property and concern of the Town necessary to the exercise-of the corporate or administrative powers, to establish, alter and change the channels of streams and water courses, and to bridge the same whenever to do so will promote the health, convenience and comfort of the inhabitants of the Town, to cause to be constructed and maintained sidewalks, and determine the materials, plans, specifications and grades of the same, to pass ordinances to enforce the same by fines, not to exceed twenty-five dollars, or imprisonment not to exceed twenty-five days, or both. * * * ” (As amended August 23, 1923.)
In the light of the amended provisions of the Charter counsel for appellant advances before us the following argument:
*311 1. Following- the reasoning of the trial judge, in view of the deletion of language relating to the absence of an alderman, the mayor nonetheless has an initial vote which could result in a three-to-three tie whereupon he could give the “deciding” or “casting” vote and that, at any rate,
2. The action of the mayor in voting against the resolution was, in effect (although the mayor was unaware of it at the time) the exercise of the veto power conferred by the amendment.
Counsel for appellees answer the appellant’s argument by asserting that:
1. While the mayor undoubtedly has the right to cast a deciding vote in case of a tie vote of the aldermen, the charter is silent as to the right of casting an “initial” or “ordinary” vote and hence this right was never conferred;
2. The right to veto relates only to “measures”, which term relates only to legislative enactments; and,
3. Even if the mayor could veto against the resolution of the November 10, 1960, meeting (relating to the appointment of the City Attorney), the mayor’s actions did not, in fact, constitute a veto.
We conclude first that the matter should be decided solely on an interpretation of Sec. 4 of the Charter, as amended, which deals specifically with the question of voting rights, etc. of the mayor, and that, consequently, it is unnecessary to refer to any of the other charter provisions. We conclude secondly that the first contention advanced by counsel for appellee is sound, i. e., that Sec. 4, as amended, is silent with respect to an initial vote on the part of the mayor and that, therefore, there was no intention to confer such a right.
There remains the question of the veto right and whether if it existed was it actually exercised. As stated above, the appellee’s position is that while the power is conferred to veto a “measure”, the latter term relates only to legislative enactments and, some authorities from other jurisdictions are cited in support of giving the term this meaning.
We find in 26A Words and Phrases, at page 570 a definition of the word “measure” as follows:
“A ‘measure’ is anything devised or done with a view to the accomplishment of a purpose; a plan or force of action intended to obtain some objective; a legislative enactment proposed or adopted; any course of action proposed or adopted by a government.” Citing McFarlan v. City of Norwood, 26 Ohio Dec. 344, 19 Ohio N.P.,N.S., 145.
We can conceive of no good reason for placing the restrictive meaning on the term as advanced by counsel for appellees, and under the above cited definition think that the resolution was a measure and could, therefore, have been vetoed by the defendant mayor.
The agreed upon set of facts recites the following:
“ * * * at the regular meeting of the Town Council of the Town of Mandeville held on November 10, 1960, it was moved by Mr. Carl Duracher, seconded by Mr. William H. Dobson, that the Town Attorney, Mr. Philip E. Pfeifer, be relieved of his duties effective December 1, 1960, and that Mr. Dalton J. Barranger be appointed as Town attorney; that on roll call, all of your petitioners (i. e. Bierhorst, Dobson, and Duracher) voted for said resolution, and the other two aider-men, F. B. Eastman and Edwin J. Bossier, voted against same; that J. Clay Prieto, Mayor, declared that under * ' * * Section 4 of the Charter of the Town of Mandeville, he had a right to vote and that he did vote against said resolution, whereupon he declared that there existed a tie vote which could not be broken and that, therefore, no action could be taken on the removal of the *312 Town Attorney and the appointment of a new one; that petitioner William H. Dobson, protested the right of the Mayor to vote and thus create a tie, whereupon the said Mayor said to take him to court.”
From the above quoted there can be no doubt but that the mayor was against the passage of the resolution and, to our minds, it is only fair to say that in voting against it he, in effect, actually vetoed it. Whether or not he was aware of his veto power is of no moment. Nor is it of consequence that the veto was not in writing as appellees suggest it should have been. There is no such requirement in the charter and an oral veto, which is of equal dignity with the oral introduction of the resolution certainly should be held effective.
For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby reversed and plaintiffs’ suit dismissed at their costs.
Judgment reversed.